No. 61,725

EVERETT E. LOVING and ANNETTE MAY LOVING, *Appellants*, v. FEDERAL LAND BANK OF WICHITA, *Appellee*.

(766 P.2d 802)

Opinion filed December 9, 1988.

*James L. Wisler*, of Wisler & Shilling, of Mound City, argued the cause and was on the brief for appellants.

*Jo Ann Butaud* and *Luis Mata*, of Evans & Mullinix, P.A., of Kansas City, argued the cause and were on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: Everett E. Loving, individually and as the personal representative of Annette May Loving, deceased, appeals from an order of the district court dismissing his action against the Federal Land Bank of Wichita (F.L.B. or Bank) for failure to state a claim upon which relief could be granted. The district court found the action barred by the failure of the plaintiff to assert his claim in a prior action between the same parties. K.S.A. 1987 Supp. 60-213(a). We affirm.

The facts, although complicated, are not seriously in dispute. At the outset we note that Annette May Loving was originally a party plaintiff along with her husband Everett E. Loving. Subsequent to the judgment in the present case Annette May Loving died. Everett E. Loving has been substituted as personal representative of his deceased wife's estate.

In February 1983, the Lovings purchased a 225-acre tract of Linn County real estate from the F.L.B. The total purchase price

was $95,000. They paid $15,000 cash and executed a three-year balloon note for the balance of $80,000, secured by a first mortgage on the realty. Under the terms of the promissory note, the Lovings were to pay $20,000 on March 1, 1984, $20,000 on March 1, 1985, and the balance of the principal and interest on March 1, 1986.

In February 1984, the Lovings entered into oral negotiations to sell the property to Randy Regalado. It appears that Regalado was to assume the Lovings' note and mortgage as part of the consideration for the property. Other details of the negotiations are not clear. On February 28, 1984, Everett Loving and Randy Regalado met with Chuck Wagoner, the president of the Federal Land Bank office in Ottawa, to discuss the proposed sale. Mr. Wagoner verbally approved the proposed sale but explained that certain conditions had to be met before Regalado could assume the Lovings' note and mortgage. Because the March 1, 1984, payment was due, Regalado wrote a check for $20,000 directly to the Bank allegedly as a down payment on the Lovings' property. That payment was credited to the outstanding balance on the Lovings' note.

No final agreement was ever reached between the Lovings and Regalado, no contract was signed, Regalado did not assume the F.L.B. loan, and the sale was never consummated. Regalado later sought return of his $20,000 payment from the Lovings, but they refused. Regalado's attorney contacted the Bank seeking return of the $20,000, but the Bank refused. On September 24, 1984, Mr. and Mrs. Regalado filed suit in federal district court in Kansas for recovery of the $20,000, and also sought actual and punitive damages for fraud. The suit named as defendants the Lovings and the F.L.B. About a year later in September 1985, upon motion of the Regalados, the Bank was dismissed with prejudice from the federal court case after paying into court $20,000, the total amount of damages claimed by the Regalados against the Bank. The Bank then debited the Lovings' loan account for the $20,000. At no time had the Lovings filed any cross-claim against the Bank, and they did not object to its dismissal from the case.

On March 1, 1985, no payment was made to the F.L.B. as required by the note and mortgage. According to the Bank's records, the payments due March 1, 1984, and March 1, 1985,

were both in default. On November 26, 1985, while the federal district court case between the Regalados and the Lovings was still pending, the F.L.B. filed suit in Linn County District Court seeking judgment on the note and foreclosure of the mortgage. The Lovings and the Regalados were named as defendants in the suit. The case was tried August 25, 1986. The district court entered judgment for the Bank for the full amount claimed as due and owing, including the $20,000 that had been paid into federal district court in September 1985. The court also granted the Bank's request for foreclosure of the mortgage on the real estate. Subsequently the property was sold at sheriff's sale, resulting in a deficiency judgment against the Lovings. However, the court indicated it would stay execution on $20,000 of the deficiency judgment, pending resolution of the dispute between the Regalados and the Lovings by the federal district court. On October 14, 1987, the federal court case ended with a jury verdict in favor of the Regalados for $36,050. Although the record is silent on the matter, presumably the $20,000 paid into court by the F.L.B. was released to the Regalados in partial satisfaction of the judgment.

On July 8, 1987, the Lovings filed this lawsuit, alleging (1) that the Bank wrongfully converted $20,000 of their money, and (2) that the Bank's conduct was extreme and outrageous and recklessly caused plaintiffs severe emotional distress and bodily harm. They also alleged that the willful, wanton, and malicious nature of the Bank's conduct entitled them to punitive damages. The Lovings sought judgment for $20,000 on the conversion claim, actual damages in excess of $10,000 on the outrage claim, and an unspecified amount in excess of $10,000 in punitive damages. In response to motions filed by the defendant, the district court first granted partial summary judgment in favor of the Bank on the claim for punitive damages. The district court later dismissed plaintiffs' petition for failure to state a claim upon which relief could be granted, basing its decision on K.S.A. 1987 Supp. 60-213(a), the compulsory counterclaim statute, and the doctrines of res judicata and collateral estoppel. Everett Loving timely appeals.

The first issue is whether the district court erred in relying upon K.S.A. 1987 Supp. 60-213(a) in dismissing the tort claims. The statute reads:

"(a) *Compulsory counterclaims.* A pleading shall state as a counterclaim any

claim which at the time of serving the pleading the pleader has against any opposing party, *if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim* and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction . . . ." (Emphasis added.)

While the statute itself does not explicitly provide that failure to plead a compulsory counterclaim precludes the pleader from asserting it in a subsequent action, this court has consistently applied the statute in that fashion. See *Mohr v. State Bank of Stanley,* 241 Kan. 42, 51, 734 P.2d 1071 (1987); *Haysville State Bank v. Hauserman,* 225 Kan. 671, 673, 594 P.2d 172 (1979); *Stock v. Nordhus,* 216 Kan. 779, 781, 533 P.2d 1324 (1975) (citing 6 Wright & Miller, Federal Practice and Procedure: Civil § 1417 [1971]). K.S.A. 1987 Supp. 60-213(a) is virtually identical to Federal Rule of Civil Procedure 13(a). The Advisory Committee's Note to Rule 13 explicitly states:

"If the action proceeds to judgment without the interposition of a counterclaim as required by subdivision (a) of this rule, the counterclaim is barred."

See 6 Wright & Miller, Federal Practice and Procedure: Civil § 1417, p. 95 n.32.

Judge Gard explains the Kansas rule as follows:

"By the new rule, which is now the same as in the federal courts, the assertion of counterclaims and setoffs by way of answer, if they arise out of the transaction or occurrence that is the subject of the plaintiff's claim, is *mandatory.* Failure to assert results in an estoppel or bar.

. . . .

. . . The test, so far as the mandatory requirement is concerned, depends on whether the counterclaim or setoff arises out of the same transaction." 1 Gard's Kansas C. Civ. Proc. 2d Annot. § 60-213(a), pp. 77-78 (1979).

It is well established in Kansas that the failure to assert a compulsory counterclaim prevents a party from bringing a later independent action on that claim. It is clear that the claims asserted in the present action should have been asserted in the earlier foreclosure action. In that action Everett E. Loving testified at length as to his negotiations with Regalado and the Bank. In fact, in his testimony he raised the issue of the $20,000 and asserted they were entitled to a credit or setoff of that amount in the foreclosure action. That contention was determined adversely to the Lovings by the court. The same $20,000 was also the subject matter of the federal court action. The issue of the right to the $20,000 paid by Regalado to the F.L.B. has been litigated on at least two prior occasions.

Appellant makes several arguments in support of his position that his claims in this action are different from those in the foreclosure action and are not compulsory counterclaims under K.S.A. 1987 Supp. 60-213(a). However, his principal argument seems to be that because the mortgage foreclosure action was an equitable action, the present claims, which sound in tort, could not be the subject of a compulsory counterclaim. The argument has no merit. Numerous foreclosure actions have implicitly recognized that legal counterclaims sounding in tort may be asserted by a defendant in an equitable action to foreclose a mortgage. *E.g., Bank of Whitewater v. Decker Investments, Inc.,* 238 Kan. 308, 314, 710 P.2d 1258 (1985), and cases cited therein.

As stated by Gard, the essential test of a mandatory counterclaim depends upon whether the counterclaim or setoff arises out of the same transaction. The mortgage foreclosure action arose from the loan transaction between the Lovings and the F.L.B., and the subsequent default on the payments due on the loan. In fact, the $20,000 asserted in the appellant's conversion claim is the identical $20,000 which was a part of the litigation between these same parties in the earlier foreclosure action. It is difficult to imagine a claim that could more clearly or directly arise out of the same transaction than a dispute in an action on a note over the proper crediting of alleged payments on the note.

Although appellant asserts other arguments in support of his contention that K.S.A. 1987 Supp. 60-213(a) does not apply, we find them to be equally without merit. We hold that the claims attempted to be asserted herein were compulsory counterclaims which should have been asserted in the earlier foreclosure action and are now barred by K.S.A. 1987 Supp. 60-213(a). In view of the decision reached on the first issue, it is not necessary to address other issues raised on appeal.

The judgment is affirmed.