(908 P.2d 1329)

No. 71,290

UNITED STATES FIDELITY AND GUARANTY COMPANY, *Appellant/ Cross-Appellee*, v. JIMMY D. MAISH, JR., R.V. SPECIALISTS, INC., and H.C.S., INC., d/b/a HOME CARE SERVICES, *Appellees/Cross-Appellants,* and ROBERT L. FISHER, TONY FISHER, ANDREW TYLER ELLIOTT, and ALFRED CAMERON III, *Defendants.*

Opinion filed December 29, 1995.

*Marc A. Powell* and *Donald N. Peterson*, of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, for appellant/cross-appellee.

*Craig Shultz*, of Shultz & Lonker, Chartered, of Wichita, for appellees/cross-appellants.

Before LEWIS, P.J., PIERRON and GREEN, JJ.

LEWIS, J.: United States Fidelity & Guaranty Company (USF&G) sued Jimmy Maish, Jr., *et al.*, (Maish) for damages based on civil fraud and conspiracy in connection with a fire loss. The trial court directed a verdict in favor of Maish, holding that the claim of USF&G against Maish was a compulsory counterclaim it failed to assert in a prior action between the parties. USF&G appeals from that decision and from an award of attorney fees in favor of Maish. Maish cross-appeals on a jury instruction issue.

Maish was the owner and sole officer of R.V. Specialists, Inc., (R.V.S.) and H.C.S., Inc., (H.C.S.). Maish and his two corporations are the appellees on this appeal. There were other defendants who are not parties to the appeal.

USF&G is an insurance company. It insured R.V.S. and H.C.S. from loss by fire or theft involving their business buildings, contents of buildings, and automobiles. This lawsuit involved three losses paid by USF&G, one to H.C.S. and the other two on behalf of R.V.S. Because of their relationship in interest, we make no distinction between R.V.S., H.C.S., and Maish, and refer, at times, to all three as "Maish."

In December 1990, the R.V.S. building was broken into and a large number of tools were stolen. USF&G paid a total of $24,927.39 to R.V.S. for this loss.

In February 1991, a Chevrolet S-10 Blazer owned by H.C.S. was vandalized while parked in front of the R.V.S. building. USF&G paid a claim of $4,229.24 to H.C.S. for damage to the Blazer.

The evidence produced at trial on the tool loss and vandalism claims indicates that Robert Fisher, the manager of R.V.S., retained defendants Andrew Tyler Elliot and Alfred Cameron III to steal the tools and vandalize the vehicle. The jury in the instant matter concluded that neither H.C.S. nor R.V.S. were part of a conspiracy involving the vandalism and tool loss.

The day after the Blazer was vandalized, the R.V.S. building mysteriously burst into flames, causing substantial damage to the

building and its contents. The State Fire Marshal and an insurance investigator determined that the fire was the result of arson.

At the time of the fire, Maish was at a hotel in Kansas City. He was there in his capacity as a lieutenant colonel of the Army Reserves.

A claim was made for the fire loss, and USF&G began the investigating process. During the investigation, it paid Bank IV as the first mortgagee of the building the sum of $44,107.85 as a result of the fire loss. It took an assignment from Bank IV of its interest in the note and mortgage. However, USF&G refused to pay Maish for his equity in the building or for the contents of the building.

In June 1991, Maish sued USF&G for its refusal to pay his claims on the fire loss. USF&G filed an answer to the Maish lawsuit and raised arson as an affirmative defense to Maish's action. It alleged that it had no obligation to pay Maish on the fire loss "because plaintiff Jim Maish, Jr., is responsible for setting the fire or having it set in order to collect insurance proceeds and profit from this incendiary fire." USF&G did not file a counterclaim to recover from Maish the amounts it had paid Bank IV as the first mortgage holder on the building.

USF&G filed its answer in the Maish lawsuit on August 2, 1991. On October 2, 1991, it acquired an affidavit from Donald Alldredge. Alldredge had worked for R.V.S. and was working for it at the time of the fire. The Alldredge affidavit implicates Maish as being involved in a conspiracy to burn down the R.V.S. building for the insurance proceeds. USF&G did not disclose the existence of the Alldredge affidavit to Maish until it filed the instant action in October 1992. There is no indication that Maish knew of the existence of the Alldredge affidavit until that time.

In March 1992, the parties settled the action filed by Maish. They executed a mutual release in which Maish released all of his claims against USF&G in consideration of a release by USF&G of the mortgage assigned to it by the original mortgagee. The suit by Maish was dismissed with prejudice. There is controversy as to the meaning and effect of the joint release and journal entry of dismissal.

In October 1992, USF&G filed the instant action. It alleges that Maish, R.V.S., and H.C.S. entered into a conspiracy to defraud USF&G. The purpose of the conspiracy was to burn down the R.V.S. building to collect the insurance proceeds. The Alldredge affidavit was attached to the USF&G petition.

The issues were tried to a jury. The trial court submitted a special question to the jury, asking it whether USF&G had knowledge of fraud or conspiracy on the part of Maish on or before August 2, 1991.

The jury found that Maish was responsible for setting the fire which damaged the R.V.S. building. It also found that USF&G knew of the fraud or conspiracy on the part of Maish prior to August 2, 1991.

Based on the findings of the jury, the trial court held that USF&G's fraud and conspiracy claims were compulsory counterclaims in the Maish lawsuit. It then directed a verdict in favor of Maish because USF&G had failed to assert its compulsory counterclaim in the previous action. The trial court also allowed Maish attorney fees in the amount of $13,071.50.

This appeal followed.

## COMPULSORY COUNTERCLAIM

The principal question in this appeal is whether USF&G's fraud and conspiracy claim against Maish was a compulsory counterclaim in the Maish lawsuit.

Compulsory counterclaims are defined by K.S.A. 60-213(a), and the relevant portions of that statute read as follows:

"A pleading *shall state* as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction; but the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon such party's claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any other counterclaim under this section.

. . . .

"(e) A claim which either matured or was acquired by the pleader *after serving the pleading may, with the permission of the court, be presented as a counterclaim by supplemental pleading.*" (Emphasis added.)

It is beyond dispute that the fraud and conspiracy claim of USF&G arose out of the same transaction or occurrence that was the subject matter of the Maish lawsuit. The Maish lawsuit was based on the fire which destroyed the R.V.S. building. The fraud and conspiracy claim by USF&G against Maish is based on the fire which destroyed the R.V.S. building. It is difficult to imagine a situation wherein claims could be any more a part of the same transaction or occurrence than the claims described above.

In Kansas, the failure to assert a compulsory counterclaim in an action bars its assertion in a later action involving the same transaction or occurrence:

"While the statute itself does not explicitly provide that failure to plead a compulsory counterclaim precludes the pleader from asserting it in a subsequent action, this court has consistently applied the statute in that fashion. See *Mohr v. State Bank of Stanley*, 241 Kan. 42, 51, 734 P.2d 1071 (1987); *Haysville State Bank v. Hauserman*, 225 Kan. 671, 673, 594 P.2d 172 (1979); *Stock v. Nordhus*, 216 Kan. 779, 781, 533 P.2d 1324 (1975) (citing 6 Wright & Miller, Federal Practice and Procedure: Civil § 1417 [1971]). K.S.A. 1987 Supp. 60-213(a) is virtually identical to Federal Rule of Civil Procedure 13(a). The Advisory Committee's Note to Rule 13 explicitly states:
" 'If the action proceeds to judgment without the interposition of a counterclaim as required by subdivision (a) of this rule, the counterclaim is barred.'
See 6 Wright & Miller, Federal Practice and Procedure: Civil § 1417, p. 95 n.32.
"Judge Gard explains the Kansas rule as follows:
'By the new rule, which is now the same as in the federal courts, the assertion of counterclaims and setoffs by way of answer, if they arise out of the transaction or occurrence that is the subject of the plaintiff's claim, is *mandatory*. Failure to assert *results in an estoppel or bar*.

. . . .
'. . . The test, so far as the mandatory requirement is concerned, depends on whether the counterclaim or setoff arises out of the same transaction.' 1 Gard's Kansas C. Civ. Proc. 2d Annot. § 60-213(a), pp. 77-78 (1979).

"It is well established in Kansas that the failure to assert a compulsory counterclaim prevents a party from bringing a later independent action on that claim." (Emphasis added.) *Loving v. Federal Land Bank of Wichita*, 244 Kan. 96, 99, 766 P.2d 802 (1988).

If USF&G's fraud and conspiracy claim was a compulsory counterclaim in the Maish lawsuit, the compulsory counterclaim bar applies and the trial court was correct.

USF&G asserts on appeal that its claim was not a compulsory counterclaim.

## WAS THE CLAIM PRESERVED BY THE JOURNAL ENTRY IN THE MAISH ACTION?

USF&G first argues that its fraud and conspiracy claim was preserved by the journal entry filed in the Maish lawsuit. The relevant portions of that journal entry read as follows:

"1. All causes of actions by plaintiffs R.V. Specialists, Inc., HCS, Inc. and Jimmie D. Maish, Jr. against USF&G arising out of or related to the subject matter of this action are hereby dismissed with prejudice;

"2. Any claims of Joyce E. Maish, individually, which may or may not exist against the defendant are hereby dismissed without prejudice;

"3. USF&G has released any mortgage interests in plaintiffs' real property;

"4. Any claim USF&G may or may not have against plaintiffs to collect on any promissory notes from plaintiffs necessarily requires a showing of wrongful, intentional, conspiratorial, fraudulent or culpable conduct by any plaintiff relating to the fire loss to plaintiffs' property."

The argument of USF&G is based on K.S.A. 60-241(a)(2), which provides:

"Except as provided in paragraph (1) of this subsection [relating to voluntary dismissals by the plaintiff or by stipulation of the parties], an action shall not be dismissed at the plaintiff's instance save upon order of the judge and upon such terms and conditions as the judge deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court. *Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.* The judge may on the judge's own motion cause a case to be dismissed without prejudice for lack of prosecution, but only after directing the clerk to notify counsel of record not less than ten (10) days in advance of such intended dismissal, that an order of dismissal will be entered unless cause be shown for not doing so." (Emphasis added.)

USF&G takes the position that the failure of paragraph 4 of the journal entry to dismiss its claims with prejudice requires us to

conclude that the dismissal was without prejudice under the statute quoted above. We do not agree.

K.S.A. 60-241(a)(2) deals with the dismissal of *claims and counterclaims*. USF&G filed neither a claim nor a counterclaim against Maish and had no *claims* to be *dismissed* in the prior action. The journal entry in question does not purport to dismiss anything asserted by USF&G. It merely identifies claims which USF&G *may or may not have* against Maish. If USF&G had pled a valid counterclaim against Maish, its argument would have merit. It did not do so, and its attempted use of 60-241(a)(2) to extricate itself from the compulsory counterclaim bar is without merit.

## WAS THE COUNTERCLAIM MATURE?

USF&G next argues that it is not subject to the compulsory counterclaim rule because its fraud and conspiracy claims against Maish were not mature at the time it filed its answer in the Maish lawsuit.

This argument is based on K.S.A. 60-213(e), set forth above. That subsection strongly implies that if a claim matures or is acquired after an answer is filed, it is not a compulsory counterclaim. For the purposes of this opinion, we accept that premise as true but conclude that it does not extricate USF&G from its current conundrum.

USF&G filed its answer in the Maish action on August 2, 1991. If, at that time, it had sufficient information to pursue a claim against Maish for conspiracy or fraud, its claim was mature. We believe that it did.

The jury that heard all the evidence in this case concluded that USF&G had knowledge of fraud or conspiracy on the part of Maish prior to the time it filed its answer. If this finding by the jury satisfies our standard of review, the claim of USF&G was mature, and its argument is without merit.

"When a verdict is challenged for insufficiency of evidence or as being contrary to the evidence, [an appellate] court does not weigh the evidence or pass on the credibility of the witnesses. If the evidence, with all reasonable inferences to be drawn therefrom, when considered in the light most favorable to the prevailing party, supports the verdict, it will not be disturbed on appeal. *Wisker v. Hart*, 244

Kan. 36, 37, 766 P.2d 168 (1988)." *Brown v. United Methodist Homes for the Aged*, 249 Kan. 124, Syl. ¶ 2, 815 P.2d 72 (1991).

We have examined the record in this case and hold that the jury's finding is supported by substantial competent evidence and is certainly not contrary to the evidence.

We need look no further than the contents of USF&G's own answer to find ample support for the jury's finding. That answer alleged:

"1. As a matter of law and public policy, plaintiffs are precluded from recovering any damages arising out of the fire on February 2, 1991 because *plaintiff Jim Maish, Jr. is responsible for setting the fire or having it set in order to collect insurance proceeds and profit from this incendiary fire.*

"2. The defendant has not waived any policy defenses or the arson defense. As a matter of law and public policy, the defense of arson cannot be waived under the circumstances of this case.

"3. No coverage for any of the alleged losses exists under policy 1MP 127031157 issued to R.V. Specialists, Inc. due to (1) the exclusion in the policy under the section entitled 'Causes of Loss', numbered exclusion 2, subsection H, regarding dishonest or criminal acts, and (2) due to the intentional concealment and misrepresentations of material facts relating to this fire loss in violation of the endorsement entitled 'Concealment, Misrepresentation or Fraud.'

"4. No coverage exists under policy number 1AB 128618017 issued to H.C.S., Inc. d/b/a Home Care Services Inc. Specifically, no coverage exists because plaintiffs have violated (1) the loss payable endorsement in the policy which precludes coverage in the event of secretion on the part of the insured, (2) the endorsement pertaining to 'Concealment, Misrepresentation or Fraud' due to the intentional concealment and misrepresentations of material facts pertaining to the claim, and (3) the policy provision in section 5 under the heading 'Definitions' on page 7 of the 'Business Auto Coverage Form' which limits coverage to a 'direct and accidental loss'.

"5. Jim Maish, Jr. has *concealed facts and made materials [sic] misrepresentations relating to the circumstances surrounding this fire loss, voiding coverage under both policies of insurance. Specifically, Jim Maish, Jr. has falsely denied:*
    (a)   *That he didn't know how the fire started;*
    (b)   *That he never made a statement to Dave Jennings about burning the building down;*
    (c)   *That he never made a statement to Bill Purvis about having a fire;*
    (d)   *That he didn't know who he owed money to;*
    (e)   *That Tony Fischer and Bob Aldridge were not employees;*
    (f)   *That his business was not in poor financial shape;*
    (g)   *The [sic] he has only been sued once;*

*(h) That he never talked to Bob Fisher about becoming a partner or part-owner in the business;*

*(i) That he did not ask Bob Fisher to order trash bins on the date of the fire;*

*(j) That he only had one pressing debt;*

*(k) That he could not remember the approximate amount of indebtedness to the IRS; and*

*(l) That he did not have any involvement in having this fire set."* (Emphasis added.)

The provisions of the USF&G answer quoted above charge Maish with fraud and conspiracy in setting the fire. In our judgment, if USF&G had sufficient facts to make those allegations, it had sufficient facts to file a counterclaim against Maish for fraud and conspiracy.

K.S.A. 60-211 provides in part: "The signature of a person [on any pleading, motion, or other paper] constitutes a certificate by the person that the person has read the pleading; that to the best of the person's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact."

A pleading signed in violation of this section may result in sanctions against the attorney or individual signing it. In this case, the answer of USF&G filed in the Maish action bears the signature of Mark A. Powell.

If the allegations of the answer as set forth above were well grounded in fact, they demonstrate that USF&G had sufficient facts to plead and prove a counterclaim against Maish for conspiracy and fraud. The answer alleges that Maish was *responsible for setting the fire or having it set.* It alleges that he did so in order to collect the insurance proceeds. It alleges 12 specific instances of misrepresentation and concealment on the part of Maish. We are at a loss to understand how, in the face of these allegations, USF&G can now argue that its claims for fraud and conspiracy were not mature when it filed its answer.

USF&G's attorneys have been furiously backpedaling to avoid the implications of the answer filed in the Maish lawsuit. The trial court was concerned about the very matters we discuss and asked counsel for USF&G to explain its position. The following discussion then took place.

"THE COURT: Counsel, what about the fact your affirmative defenses listed in specificity both conspiracy and fraud? Would you address the issue whether or not that's res [judicata] then?

"MR. POWELL: Yes. The affirmative—the defenses in our answer were policy defenses. We never claimed the tort of conspiracy which is a very different thing. We claimed that under the policy that the owner had done this. That's different, therefore, we didn't owe any money on the contents. That's different from suing him for the money we paid the bank.

"THE COURT: Do you have any authority that supports that difference? Is it just your logical reasoning?

"MR. POWELL: I would say it's my logical reasoning based on the common law that [it got an] insurance policy defense raised under the policy. But bringing a separate cause of action for conspiracy which the word 'conspiracy' is not in there and the only reason fraud is in there is because it's a policy defense. It is a separate counterclaim. And they were not compulsory because we had not acquired the evidence from Alldredge which was sufficient to give us evidence to sue for those counterclaims at the time we answered.

"The evidence from USF&G is they acquired that two months later. That's not been controverted.

"THE COURT: So your statement to this court as an officer of this court under your defense you found on page three of your answer in the original case that number three that refers to endorsement, concealment, misrepresentation, fraud. Number four dealing specifically with violations of concealment, misrepresentation, fraud. Number five where you specifically name Mr. Maish as concealing facts and making material misrepresentations including where you said he asked Bob Fisher to order trash bins on the day of the fire. You are telling me those aren't specific enough to be affirmative defenses that would enable you to also have [a] compulsory counterclaim at that time with the knowledge that you say you have as outlined in the various subparagraphs of number five?

"MR. POWELL: Your Honor, yes. We did not have sufficient—

"THE COURT: Very well.

"MR. POWELL: —evidence

"THE COURT: I just wanted to have you on the record as saying that.

"MR. POWELL: Yes."

We think USF&G's protestations rang hollow at the time they were made to the trial court, and they continue to do so at this date. In order to accept the USF&G explanation, we must conclude that when its attorneys filed the answer to the Maish lawsuit, they violated K.S.A. 60-211 and that the allegations of conspiracy, fraud, and misrepresentation were not grounded in fact. Neither USF&G nor its attorneys are in any position to do so at this time. We will not allow counsel to now suggest that the allegations of

the answer filed in the prior action were not grounded in fact as required by K.S.A. 60-211. Indeed, we hold they are estopped to do so.

USF&G also argues that at the time it filed its answer, it had not suffered a loss and was in no position to file a counterclaim. This allegation is disingenuous at best. By the time USF&G had filed its answer in the prior action, the following had taken place: (a) It had paid Bank IV the sum of $44,107.85 on the first mortgage, which the bank held on the R.V.S. building. (b) It had received an assignment of the noted mortgage, which was never recorded.

We conclude that USF&G suffered a loss sufficient to support a counterclaim against Maish when it paid off the first mortgage to Bank IV. It received an assignment of the note and mortgage which it never recorded. It made a demand on Maish for full payment of the $44,107.85 *before it filed its answer*. The arguments raised concerning the assignment being invalid or defective are spurious and not well founded.

We hold that USF&G had a valid and mature claim against Maish for fraud and conspiracy prior to the time it filed its answer in the previous action. The fact that it may not have had the names of Maish's coconspirators does not mean it did not have a claim for civil conspiracy. It had sufficient facts to plead that Maish was responsible for "having [the fire] set." It had enough facts to specifically plead that Maish concealed "[t]hat he did not have any involvement in having this fire set." If it had facts to support these allegations and the other allegations of its answer, it had sufficient facts to support a counterclaim for fraud and conspiracy.

## RES JUDICATA OR ESTOPPEL?

USF&G argues that since there was no judgment on the merits in the previous action, its claims are not barred by the compulsory counterclaim rule.

This position is a reflection of the use of res judicata as the philosophic basis for the compulsory counterclaim rule. Under that standard, a compulsory counterclaim is not barred if the prior action was not terminated by a judgment on the merits.

There are no Kansas decisions that specifically state what philosophy underlies our compulsory counterclaim rule.

An examination of federal authorities on the subject indicates that the bar of the counterclaim may be supported by either the doctrine of res judicata or that of estoppel and waiver:

"While neither Equity Rule 30 nor the present Rule expressly provides that failure to assert a compulsory counterclaim will be deemed to preclude its later assertion, such result was reached under the Equity Rule, and has been reached under Rule 13 in accordance with similar reasoning, *i.e., that the principle of res judicata applies to all issues that should have been raised, even though actually omitted. In some cases, however, as where a settlement is reached after the pleading stage, it is more appropriate to apply Rule 13(a) on an estoppel or waiver basis.* Of course, if defendant is in any doubt as to the nature of his counterclaim, whether permissive or compulsory, careful practice requires him to plead it in order to protect himself." (Emphasis added.) 3 Moore, Federal Practice § 13.12 [1] (2d ed. 1995).

Wright, Miller & Kane say the following:

"Considering the cases that have dealt with the problem of the omitted counterclaim as a group, most of the courts, but not all, have spoken in terms of 'res judicata' preventing the later assertion of the claim.

"Other authorities, including several courts, have relied on the theories of 'waiver' or 'estoppel' as the theoretical basis for preventing a second suit on the omitted counterclaim. One state court, interpreting rules virtually identical to the federal rules, has said that Rule 13 does not create the absolute bar of res judicata, but is 'a bar created by rule . . . which logically is in the nature of an estoppel arising from the *culpable conduct of a litigant in failing to assert a proper counterclaim.'* In many ways this analysis provides a more apposite and useful approach to the problem of omitted counterclaims than does the doctrine of claim preclusion. For example, it affords a means of extricating a defendant who has not knowingly refrained from asserting his claim from the rigors of the compulsory counterclaim rule; this type of safety valve may be particularly important when an insurance company has controlled the defense of the first action and the actual defendant has not had a realistic opportunity to assert his claim. Moreover, an analysis in terms of estoppel is a more flexible tool for handling cases resulting in a default judgment, a consent judgment, or a dismissal after a compromise agreement." 6 Wright, Miller & Kane, Federal Practice & Procedure: Civil 2d § 1417 (1990).

We see no particular reason why either rule could not be utilized, depending on the factual situation presented.

There appear to be two key decisions in Kansas, neither of which provides us with a definitive answer. In *Mohr v. State Bank of Stanley*, 241 Kan. 42, 734 P.2d 1071 (1987), a party was barred from asserting a claim because it was a compulsory counterclaim in previous litigation between the parties. This decision can be used to support the estoppel rule. In *Mohr*, the previous action was not terminated by a judgment on the merits, and res judicata could not have been the basis for invoking the compulsory counterclaim bar. The court, however, does not comment on the basis for its holding, and we do not consider the decision to be precedential on the issue at hand.

*Loving v. Federal Land Bank of Wichita*, 244 Kan. 96, 766 P.2d 802 (1988), is another compulsory counterclaim decision. In *Loving*, the previous litigation had proceeded to judgment on the merits. The failure of the plaintiff to assert his claim in the previous action was held to be a bar to the maintenance of the current action. As in *Mohr*, the court did not define the philosophical basis behind the rule. As we previously noted, the court quotes from Gard's Kansas C. Civ. Proc. 2d Annot. that " '[f]ailure to assert [a compulsory counterclaim] results in an estoppel or bar.' " 244 Kan. at 99. As with *Mohr*, however, we do not consider *Loving* to have established binding precedent on the issue at hand.

Our judicial system strives to achieve results with economy and efficiency. When parties have multiple claims and issues arising out of the same facts, conduct, or transactions, it is our goal that these issues should be resolved in one action, not several. To that end, we have rules to discourage the piecemeal handling of disputes. One of these rules is the compulsory counterclaim rule. If a plaintiff brings a claim and a defendant has claims against the plaintiff arising out of the same transaction or occurrence, those claims are compulsory counterclaims and must be asserted in the same action or be forever barred.

In the final analysis, the compulsory counterclaim rule is designed to force parties to assert and litigate all claims they have against each other arising out of the same transaction in the same lawsuit. The compulsory counterclaim rule is designed to penalize a party for failing to assert a claim when it had an opportunity to

do so. Estoppel is a rule designed to penalize. We believe that the estoppel analysis is best suited to support the bar of the compulsory counterclaim in most cases. Estoppel in this context is the conscious failure to assert a claim, which should have been asserted, to the detriment of the other party. It is "silence by those who ought to speak, or situations wherein it would be unconscionable to permit a person to maintain a position inconsistent with one in which he has acquiesced." *Harrin v. Brown Realty Co.*, 226 Kan. 453, 459, 602 P.2d 79 (1979).

We conclude that the doctrine of res judicata is not applicable in this case. We believe these facts are more in tune with the estoppel theory, and we adopt that theory as the philosophical basis for the enforcement of the counterclaim bar in the instant matter.

The position sought by USF&G, if allowed, would mean that when a case is settled, the compulsory counterclaim rule does not apply. We view this as unacceptable. As will be seen, we suspect that the Maish action was settled under false pretenses. Not only did USF&G fail to assert its counterclaim, it concealed evidence which may have led Maish to settle his claim against USF&G when he was less than knowledgeable about USF&G's claim against him. If the res judicata rule is applied in this case, USF&G benefits from its concealment, and the purpose of the compulsory counterclaim rule is subverted. In *Dindo v. Whitney*, 52 F.R.D. 194, 199 (1971), the trial court had the following to say about the subject at hand:

"The plaintiff also argues that since the prior action was not litigated but was settled, the purpose of Rule 13(a) is not violated by the present action. I do not accept this interpretation of Rule 13(a). The Rule does not require that the case be tried on the merits; it simply requires that the counterclaim be asserted in the pleadings. *Cf. Reynolds v. International Harvester Co.*, 141 F. Supp. 371 (N.D. Ohio 1955). In the present action, a settlement was reached between the attorneys on the basis of their evaluation of the facts. There was no fraud, deception, or misrepresentation on the part of the attorneys which would make the settlement void. The settlement was the resolution of the claim by Whitney against Dindo. To hold that Rule 13(a) does not apply when the prior action is settled would completely subvert the Rule's purpose of bringing about a just and speedy resolution of all the claims between the parties arising out of the same transaction or occurrence."

The First Circuit agreed with the trial court in this case, and in *Dindo v. Whitney*, 451 F.2d 1, 3 (1st Cir. 1971), the court said:

"The bar arising out of Rule 13(a) has been characterized variously. Some courts have said that a judgment is res judicata of whatever could have been pleaded in a compulsory counterclaim. *Dragor Shipping Corp. v. Union Tank Car Co.*, 9 Cir., 1967, 378 F.2d 241; *United States v. Eastport S.S. Corp.*, 2 Cir., 1958, 255 F.2d 795. Other courts have viewed the rule not in terms of res judicata, but as creating an estoppel or waiver. *Lawhorn v. Atlantic Refining Co.*, 5 Cir., 1962, 299 F.2d 353; *Dow Chemical Co. v. Metlon Corp.*, 4 Cir., 1960, 281 F.2d 292. The latter approach seems more appropriate, at least when the case is settled rather than tried. The purposes of the rule are 'to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters.' *Southern Constr. Co. v. Pickard*, 1962, 371 U.S. 57, 60, 83 S. Ct 108, 110, 9 L. Ed. 2d 31. If a case has been tried, protection both of the court and of the parties dictates that there should be no further directly related litigation. But if the case is settled, normally the court has not been greatly burdened, and the parties can protect themselves by demanding cross-releases. In such circumstances, absent a release, better-tailored justice seems obtainable by applying principles of equitable estoppel.

"If, in the case at bar, Dindo, clearly having opportunity to assert it, *cf. La-Follette v. Herron*, D.C. Tenn., 1962, 211 F. Supp. 919, knew of the existence of a right to counterclaim, the fact that there was no final judgment on the merits should be immaterial, and a Rule 13(a) bar would be appropriate. His conscious inaction not only created the very additional litigation the rule was designed to prevent it exposed the insurer to double liability. We are not persuaded that a final judgment is a sine qua non to invocation of the bar; there is nothing in the rule limning the term 'judgment.' "

See *House v. Hanson*, 245 Minn. 466, 470-71, 72 N.W.2d 874 (1955).

We agree with the reasoning of the First Circuit as set forth above. There is nothing in our statute requiring that we apply the rule of res judicata. We do not believe that such a philosophy is consistent with the goals sought to be achieved by the compulsory counterclaim rule. We hold that the fact that the previous action was settled rather than litigated on the merits does not avoid the compulsory counterclaim bar in this case.

## MISCONDUCT

We have carefully examined the record in this case. It appears to us that not only did USF&G fail to assert a compulsory coun-

terclaim, it also deliberately concealed vital evidence that may have affected the settlement of the Maish lawsuit.

In October 1991, USF&G obtained an affidavit from Donald Alldredge. This affidavit directly implicated Maish in the conspiracy to burn the R.V.S. building. It is considered to be of such importance to USF&G that that party now argues its claim against Maish was not mature until it obtained the Alldredge affidavit. We think some indication of the value of the information contained in the affidavit is indicated by the fact that the affidavit was appended to the USF&G petition in the instant matter.

The Alldredge affidavit was in the hands of USF&G's attorneys for 5 months prior to the settlement of the Maish lawsuit. Despite this fact and despite our discovery rules, it appears that USF&G willfully and deliberately concealed the existence of the Alldredge affidavit.

When Maish agreed to dismiss his action against USF&G, he did not know that the Alldredge affidavit existed. We believe that the concealment of this evidence skewed the entire settlement process.

Why would USF&G have concealed this evidence? We could surmise that it did so in order to dispose of Maish's claim against it so that it could then proceed against Maish without risk. This is a reasonable supposition even though we do not suggest it is the true and only answer.

There is evidence that USF&G provided false information to the court on the pretrial order. The pretrial conference in the Maish suit was held on January 21, 1992, 4 months after the Alldredge affidavit was obtained. In the Alldredge affidavit, the affiant gives his address as 507 Morgan Avenue, Cullman, Alabama. Yet, in the pretrial order, USF&G lists one of its witnesses as "Donald Lynn Alldredge, (address unknown)." This was untrue. USF&G had the address of Alldredge but did not disclose it. Whether the admission was deliberate or simply the result of negligence is irrelevant. USF&G had an obligation to see to it that the information it provided on the pretrial order was accurate. If it failed to do so, it is responsible for concealing evidence whether that error was deliberate or the result of negligence. To list an address as unknown

implies that this witness has not been contacted and misleads the other parties and the court.

USF&G responded to interrogatories on September 2, 1991, and the following responses are relevant:

"Interrogatory 2:

"State the names *and addresses* of any and all persons known to you, your attorneys, or any other representatives who claim to have witnessed or to have information concerning the incident involved herein, and state whether they were eye witnesses, investigators, police, etc.

"Answer:

"Defendant cannot give a complete answer at this time because plaintiffs' counsel is currently in possession of defense counsel's investigation files. Once the files are returned, this interrogatory answer will be supplemented. At the present time, defendant answers as follows:

. . . .

    d. Lynn Aldredge (location unknown), former employee of RV Specialists." (Emphasis added.)

"Interrogatory 4:

"*List the names, present addresses, and place of employment of all persons, including the parties to this action, giving any reports, or statements, written or otherwise, who were interviewed or questioned by or on behalf of the parties in connection with the matter complained of in this is case; and state the dates on which the said reports or statements were obtained, and the name, title, and address of the person or persons taking such reports or statements, and the names and addresses of all persons who have custody of the report or statements.*

"Answer:

"A complete answer to this interrogatory 'may be derived or ascertained from the business records' of USF&G, as provided by K.S.A. 60-223(c). These records are currently in the possession of plaintiffs' counsel. The requested information can be obtained from all transcribed statements and examinations under oath and the reports of Dave Goehring, Bowman Security Company and Pro-claim Adjusting Service. Additional statements are contained in a separate file marked 'Statements.' See also the copy of USF&G claim file." (Emphasis added.)

The answers to the interrogatories given by USF&G were correct at the time the answers were given. Subsequent to giving the answers on the interrogatories, USF&G obtained the Alldredge affidavit. Although they had that affidavit for 5 months prior to the settlement of the lawsuit, they failed to supplement or correct their answers to the interrogatories.

K.S.A. 60-226(e) provides:

"A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement the party's response to include information thereafter acquired, except as follows:

"(1) *A party is under a duty seasonably to supplement the party's response with respect to any question directly addressed to (A) the identity and location of persons having knowledge of discoverable matters, and (B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which the party is expected to testify and the substance of the party's testimony.*

"(2) *A party is under a duty seasonably to amend a prior response if the party obtains information upon the basis of which (A) the party knows that the response was incorrect when made, or (B) the party knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.*" (Emphasis added.)

In *Smith v. Smith*, 5 Kan. App. 2d 117, Syl. ¶ 1, 612 P.2d 1257 (1980), we said: "When a party knows that a response to a request for discovery though correct when made is no longer true, the failure to supplement that response may be a knowing concealment." In *Smith*, the plaintiff had valued a feedlot at $47,800. After he had done so, he sold it for $250,000, and he did not bother to disclose the sale. We held that the failure to supplement under the circumstances was a knowing concealment. 5 Kan. App. 2d at 119.

The failure of USF&G to supplement its answers in the Maish litigation is similar to the failure of the plaintiff in *Smith* to supplement his answers. Under the philosophy of *Smith*, we conclude that USF&G knowingly concealed the Alldredge affidavit when it did not supplement the answers to its interrogatories. Anyone who doubts the serious nature of failing to comply with discovery rules in this state should read the recent Supreme Court opinion in the case of *Hawkins v. Dennis*, 258 Kan. 329, 905 P.2d 678 (1995).

Counsel for USF&G has attempted to justify the failure to disclose this evidence by claiming it was work product. Counsel engaged in the following conversation with the trial court:

"THE COURT: Let me ask another thing that concerns me. Is it true that your client received on October the 2nd, 1991, the statement from Alldredge?

"MR. POWELL: Yes.

"THE COURT: And it is true that is while the first case [was] going on?

"MR. POWELL: Yes.

"THE COURT: Are you saying you were not under a continuing obligation under the request for admissions at that time or request for production to produce that document?

"MR. POWELL: Yes. There is a memo I had an investigator interview Mr. Alldredge for me. I have a memo in my file where I gave him instructions on what to ask. So we can show work product.

"THE COURT: Did you ever list him as a witness then?

"MR. POWELL: Yes. We listed him.

"THE COURT: At the time of the listing of the witnesses don't you have any obligation to turn over any statements of that witness to turn them over to the other side?

"MR. POWELL: I did believe that to be true.

"THE COURT: You did list him in the original pretrial order?

"MR. POWELL: The time the pretrial order was filed I think the release had been signed and it was pretty obvious we were going to dismiss the case.

"THE COURT: So your excuse you are offering this court for not revealing that statement you are claiming it was work product?

"MR. POWELL: Yes. I can show that to you.

"THE COURT: I just want you on the record.

"MR. POWELL: Thank you.

"THE COURT: You have any response? I'll let you respond for about five minutes.

MR. SHULTZ: I don't need to respond that long, Your Honor. I would note in the original pretrial order that was—I'm not sure what day it was filed—it shows it was entered on the 21st day of January, 1992. I'm not sure it may have been filed sometime thereafter. Donald Alldredge is listed by the defendants as a witness and is shown as having an address unknown by the defendants. Even apart from whether there's attorney/client privilege, I think there's a situation where you can't through neglect or otherwise just say we don't know where he's at when you got an affidavit with an address on it and everything else.

"The essence of our argument is they alleged it all and they knew it all. They had it all even when they filed their answer they had the affidavit then for two more months until the pretrial order was filed and may have been five months or whenever it was filed. They knew exactly what they were doing and, I think, it's all waived and released.

"THE COURT: Counsel, what I'm going to do is let you know that I am greatly concerned about this type of activity with reference to the October 2nd affidavit and now I find out plaintiff, the defendant in that case, listed him as a witness with an address unknown and the affidavit lists an address of the individual. That concerns me."

Counsels' position on work product is without merit.

K.S.A. 60-226(b)(1) provides that "a party shall not require a deponent to produce, or submit for inspection, any writing pre-

pared by, or under the supervision of, an attorney in preparation for trial." It does not permit a party to knowingly fail to list an address on a pretrial order or to refuse to reveal the existence of evidence based on counsel's unilateral decision that the matters are work product.

To begin with, this was a statement given to an investigator hired by the attorneys for USF&G. We doubt that this statement would qualify as protected work product. See 23 Am. Jur. 2d, Depositions & Discovery § 62, p. 399. However, assuming that the evidence in question was work product, the work product rule does not justify the concealment of evidence in violation of our rules of discovery. The ultimate determination of whether an item is work product or not is to be made by the trial court. We cannot see where this issue would ever come to the trial court if a party is entitled to conceal the existence of a statement on the basis that it is work product.

We hold that an attorney's unilateral decision that certain evidence is "work product" does not justify the concealment of that evidence in violation of the rules of discovery.

We believe that the concealment of evidence by USF&G in the Maish action skewed the settlement of that case. It effectively prevented that case from being litigated on its merits. Under these circumstances, USF&G is estopped from arguing that the compulsory counterclaim rule cannot be invoked because the prior action was settled and not tried on the merits.

## ATTORNEY FEES

The trial court allowed Maish the sum of $13,071.50 as attorney fees. It based this award on the provisions of K.S.A. 40-908. USF&G argues that the award is not supported by that statute. We agree.

" ' "In Kansas, attorney fees are not allowed unless authorized by statute or by agreement of the parties.' " *Clark's Jewelers v. Humble*, 16 Kan. App. 2d 366, 372, 823 P.2d 818 (1991) (quoting *Dickinson, Inc. v. Balcore Income Properties Ltd.*, 12 Kan. App. 2d 395, Syl. ¶ 3, 745 P.2d 1120 [1987], *rev. denied* 242 Kan. 902 [1988])." *Golconda Screw, Inc. v. West Bottoms Ltd.*, 20 Kan. App. 2d 1002, 1008, 894 P.2d 260 (1995). Further, a court does not have

authority to impose attorney fees under its equitable powers in the absence of authorization by statute. See 20 Kan. App. 2d at 1009.

K.S.A. 40-908, relied upon by the trial court, provides:

"That in all actions now pending, or hereafter commenced in which judgment is rendered against any insurance company on any policy given to insure any property in this state against loss by fire, tornado, lightning or hail, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action including proceeding upon appeal to be recovered and collected as a part of the costs: *Provided, however,* That when a tender is made by such insurance company before the commencement of the action in which judgment is rendered and the amount recovered is not in excess of such tender no such costs shall be allowed."

We conclude that K.S.A. 40-908 does not support the award of attorney fees in this action. The statute, by its own terms, operates to allow a "plaintiff a reasonable sum as an attorney's fee" in a case where "judgment is rendered against any insurance company on any policy given to insure any property in this state against loss by fire."

In this action, Maish is not a plaintiff, and he did not recover a judgment against USF&G on the policy. To the contrary, the jury determined that Maish burned down his own building, thereby barring him from any actual or theoretical recovery on the policy. We simply are unwilling to extend the language of 40-908 to permit attorney fees on the facts shown.

Maish relies on language found in *State Farm Fire & Cas. Co. v. Liggett*, 236 Kan. 120, 689 P.2d 1187 (1984), to justify his award of attorney fees under 40-908. This reliance is misplaced, and we do not visualize that case as authority to support this award for attorney fees.

To affirm the award of attorney fees in this case based on 40-908 would absolutely turn the statute on its ear, and we decline to do so.

We understand the trial court's frustrations with USF&G in the instant matter. We have quoted some of the debates between the trial court and the attorney for USF&G. The fact is, however, that there is no statutory authority on which to base this award of attorney fees, and it must be reversed.

It is obvious that we also find the conduct of USF&G objectionable. However, most of the misconduct occurred during the Maish lawsuit and not this action. There is also the fact that Maish was determined by the jury to be an arsonist and can hardly be said to have clean hands in this matter.

In summary, we affirm in part and reverse in part and specifically hold as follows:

(1) The fraud and conspiracy claim asserted against Maish in this action was a compulsory counterclaim in the previous action. The failure of USF&G to file a compulsory counterclaim in that action bars the claim in this action.

(2) The claim of USF&G was not preserved by the journal entry settling the Maish lawsuit.

(3) The fraud and conspiracy claim of USF&G against Maish was fully mature when USF&G filed its answer in the previous action.

(4) The basis for the application of the compulsory counterclaim rule in this case is estoppel and not res judicata.

(5) USF&G was guilty of deliberate concealment of evidence in the previous action and is estopped to rely on the issue of res judicata in this action.

(6) The award of attorney fees to Maish was error and is reversed.

## THE CROSS-APPEAL

Maish has cross-appealed certain issues. In view of our decision to affirm the trial court's order directing a verdict in favor of Maish, the issues raised on cross-appeal are moot, and we do not reach them.

Affirmed in part and reversed in part.