Terry G. LEE, Plaintiff,

v.

**FARMERS GROUP, INC. and Farmers Insurance Exchange, Defendants.**

No. 95–2165–KHV.

United States District Court,
D. Kansas.

April 8, 1996.

Order Supplementing Decision
April 10, 1996

Terry G. Lee, Marietta, GA, pro se.

Leonard Singer, Stephany J. Newport, Sharon D. Hess, Bioff, Singer & Finucane, Kansas City, MO, Eileen L. McGeever, Rushall, McGeever & Sappington, Carlsbad, CA, for defendants.

Leonard Singer, Sharon D. Hess, Bioff, Singer & Finucane, Kansas City, MO, Eileen L. McGeever, Rushall, McGeever & Sappington, Carlsbad, CA, for counter-claimants.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

On October 4, 1994, plaintiff Terry G. Lee [Lee] filed suit in the United States District Court for the Southern District of California, seeking relief under Title VII, 42 U.S.C. § 2000e *et seq.*, and state law. Lee claimed that in January, 1992, on account of his race and in retaliation for the exercise of rights protected under Title VII, Farmers Group, Inc., and Farmers Insurance Group[1] refused to promote him to the position of Service Center Manager in St. Louis, Missouri. Lee also claimed fraud, negligent misrepresentation and breach of contract, on account of defendants' refusal to pay "spot bonuses" allegedly due under his contract of employment. Finally, Lee sought to rescind a severance agreement which he executed on May 9, 1994, on account of economic duress or business compulsion, and mistake. *Complaint* in Case No. 941533B.

Farmers denied liability and alleged, *inter alia*, that Lee's claims were barred by (1) the severance agreement, which expressly released defendants from all liability for employment-related claims; (2) a permanent injunction entered in *Farmers Group, Inc., et al. v. Terry G. Lee*, Case No. 94C8845 in the District Court of Johnson County, Kansas [the Johnson County suit]; (3) doctrines of collateral estoppel and *res judicata;* and (4) compulsory counterclaim rules applicable in the Johnson County suit. Farmers also as-serted a counterclaim for costs and legal fees incurred on account of Lee's breach of the severance agreement. *Defendants' Joint Answer And Counterclaim* (Doc. # 4) filed April 10, 1995.

On March 30, 1995, the California district court transferred Lee's case to this Court. It now comes before us on cross-motions for summary judgment: *Plaintiff's Motion For Summary Judgment In His Favor On All Claims Presented* (Doc. # 17) filed May 25, 1995, and *Defendants' Joint Motion For Summary Judgment In Their Favor On Lee's Claims And On Their Counterclaim* (Doc. # 11) filed May 5, 1995. Plaintiff, who appears *pro se* but has completed one and one-half years of law school, claims that he is entitled to summary judgment on all claims for relief under Title VII, as well as on his claims for fraud, negligent misrepresentation, and breach of contract, because (1) he did not voluntarily execute the severance agreement; (2) the severance agreement is void because it violates public policy; (3) defendants illegally obtained injunctive relief against him in the Johnson County suit; and (4) defendants' motion for summary judgment relies heavily upon discovery illegally obtained in the Johnson County suit.

Defendants maintain that they, and not Lee, are entitled to summary judgment. They argue that Lee's claims are barred by the doctrine of *res judicata*, by Kansas law with respect to compulsory counterclaims, and by the substantive release of liability embodied in the severance agreement. Defendants also argue that Lee's rescission claim is without merit and that even if the agreement was initially voidable, Lee later ratified it in circumstances free of duress. Finally, defendants argue that as a matter of law, they are entitled to prevail on their counterclaim for breach of contract.

Having reviewed the record and carefully considering the parties' arguments, the Court finds—for reasons stated more fully below—that defendants' motion for summary judgment should be sustained in part and

---

1. For ease of reference, the Court refers to defendants jointly as "Farmers."

that plaintiff's motion for summary judgment should be overruled.

### Summary Judgment Standards

Rule 56(c) of the Federal Rules of Civil Procedure directs the entry of summary judgment in favor of the party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Entry of summary judgment is mandated, after an adequate time for discovery and upon motion, against a party who fails to make a showing to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial. *Meredith v. Beech Aircraft Corp.*, 18 F.3d 890, 893 (10th Cir.1994). Summary judgment is inappropriate, however, if there is sufficient evidence on which a trier of fact could reasonably find for the nonmoving party. *Prenalta Corp. v. Colorado Interstate Gas Co.*, 944 F.2d 677, 684 (10th Cir.1991).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact by informing the court of the basis for its motion. *Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993). This burden, however does not require the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553 (emphasis in original). Once the moving party properly supports its motion, the nonmoving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Muck v. United States*, 3 F.3d 1378, 1380 (10th Cir.1993). The court reviews the evidence in a light most favorable to the non-moving party, *e.g., Thrasher v. B. & B. Chemical Co., Inc.*, 2 F.3d 995, 996 (10th Cir.1993), under the substantive law and the evidentiary burden applicable to the particular claim. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2514.

### Undisputed Material Facts

The following facts are either deemed to have been admitted by plaintiff under D.Kan. Rule 56.1 or, where disputed, construed in the light most favorable to plaintiff.[2]

Farmers Insurance Exchange first employed Lee, a Black male, on November 16, 1982.[3] On April 14, 1989, Lee filed an EEOC charge alleging that in 1988 and 1989, Farmers had denied him certain promotions on account of the fact that he had filed an EEOC charge in 1987. Lee later filed suit on that charge and on June 5, 1992, the United States District Court for the District of Kansas awarded him $2,200.77 with re-

---

**2.** D.Kan.Rule 56.1 outlines the required procedure for summary judgment motions in the District of Kansas. Under that rule, the memorandum or brief in support of a motion for summary judgment shall begin with a section that contains a concise statement of material facts as to which the movant contends no genuine issue exists. The facts shall be numbered and shall refer with particularity to those portions of the record upon which movant relies. A memorandum in opposition shall begin with a section that contains a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute shall be numbered by paragraph, shall refer with particularity to those portions of the record upon which the opposing party relies,

and, if applicable, shall state the number of movant's fact that is disputed.

Of crucial importance in this case is the requirement that all material facts set forth in the movant's statement are deemed admitted for summary judgment purposes unless specifically and properly controverted by the opposing party. Lee did not specifically controvert any of defendants' material facts. As a result, the Court deems them to be admitted for purposes of the pending motions.

**3.** Plaintiff claims that he was employed by "defendants"—not merely by Farmers Insurance Exchange. This dispute raises no genuine issue of material fact concerning the instant motion.

spect to a failure to promote in 1988.[4] *Terry G. Lee v. Farmers Insurance Company, Inc.*, Case No. 90–2181–V, 1992 WL 161012. On November 25, 1992, Lee filed another EEOC charge (Charge No. 340930428) alleging that he had been denied promotional opportunities on account of his race and in retaliation for the fact that he had prevailed in his Title VII lawsuit.

Beginning in October, 1990, Lee held the position of Liability Claims Manager in Kansas City. Farmers realigned its job classifications, however, and effective October 1, 1993, transferred Lee to Des Moines, Iowa, as Branch Claims Manager for the State of Iowa.[5] Farmers authorized payment of Lee's temporary living expenses in Iowa from October 1, 1993 through March 1, 1994, because Lee's wife and family could not immediately relocate from Kansas City. When Farmers notified Lee that temporary living expense benefits would cease on May 31, 1994, he was "astonished"; he had assumed that benefits would continue until his wife had a job in Iowa because Farmers had said that it would "take care of [him]" if he accepted the transfer. Lee therefore requested an "open door" meeting with Farmers' Human Resources Manager, Sam Olsen.

Lee met with Olsen on February 21, 1994. At the meeting, Lee expressed his concerns regarding the temporary living expense dispute.[6] Shortly after this meeting, Lee received a letter from Farmers' Regional Manager, Don Borge. Borge stated that Olsen had asked him to respond; that Lee had been treated fairly with respect to temporary living expenses; that Lee had a job in Des Moines; and that Farmers expected him to do it.

Shortly thereafter, on March 21, 1994, Lee wrote Olsen a letter which complained that Farmers' manager Bill Lewis had made racially inflammatory comments and that Farmers' Regional Claims Manager Larry Lunn was engaging in "covert activities in an attempt to discredit [him]". Lee also complained that Farmers' conduct constituted conspiracy and violated "RICO Statutes," as well as his civil rights. Lee further represented that he was requesting a protective order from the Justice Department because of the foregoing activities. Olsen apparently responded by letter dated March 25, 1994, seeking further information so that a thorough investigation could be initiated and corrective action taken, if necessary.

The requested information was apparently not forthcoming and Borge raised the matter in a letter to Lee dated April 4, 1994. In that letter, Borge noted that the reporting of serious misconduct was appropriate and consistent with Lee's responsibilities as an employee. Borge noted that the rights and reputations of others were affected, however, when "these types of allegations" were made. Borge stated that if Lee did not provide the requested information by the close of business on April 7, 1994, "a fair conclusion is that your handling of this situation is not in good faith and is not consistent with continuing employment with this Company." Borge's letter concluded as follows:

> Let me repeat, the Company welcomes and responds responsibly to good faith reports of misconduct and problems; your handling of this situation has not reflected good faith because your actions have hindered the prompt investigation of your allegations. Failure to personally respond within the Farmers' procedures with the requested information above will result in your termination.

---

4. The Court ruled against plaintiff with respect to Farmers' failure to promote Lee to the position of Regional Liability Claims Manager in 1989.

5. Lee claims that Farmers "conspired to pressure" him to accept this position, but he admits that he gained monetary and career advancement advantages by accepting it. Moreover, the record contains no properly submitted evidence of any "conspiracy" or undue "pressure" by Farmers and no evidence of any departure from Farmers' policy with respect to reimbursement of temporary living expenses.

6. Lee also raised additional concerns: (1) the fact that when he had been asked to transfer, he was told that he might not be asked again; (2) his perception that he "was not being treated fairly like other managers in the region" and (3) Farmers' failure to award him a "spot bonus" for developing a medical program to review liability claims.

In response to Borge's letter, Lee agreed to discuss his concerns with Curtis H. Carson, Farmers' Home Office EEO officer, on April 11, 1994.[7] At that time, Curtis questioned Lee, under oath, about his concerns regarding all of the foregoing matters. At that time, Lee explained that his complaint of "covert activities" by Lunn referred to the fact that Lunn (Lee's supervisor) had called one of Lee's subordinates with disparaging remarks about one of Lee's hiring decisions. Lunn allegedly told the individual not to tell Lee about the telephone call, which occurred on March 21, 1994, but the individual disregarded Lunn's request. Lee refused to identify the individual for Carson, however, and he also refused to tell Carson the specific comments that Lunn had allegedly made. In addition, Lee refused to identify two of the three witnesses to the racially inflammatory statements allegedly made by Lewis.[8]

Two days later, on April 13, 1994, Lee agreed to resign and enter into a severance agreement. On April 18, 1994 Farmers put plaintiff on leave without pay for 30 days pending completion of the written agreement. That same day, Farmers telecopied a draft agreement to plaintiff's attorney, Martin Meyers.[9]

Meyers advised Lee during the negotiations concerning the severance agreement. Lee got a second opinion concerning the severance agreement, from attorney John Turner. Lee also consulted with the United States Equal Employment Opportunity Employment Commission regarding the agreement[10]. Moreover, Lee personally participated in negotiating the agreement, suggesting changes to Meyers and negotiating directly with Borge.[11]

Meyers signed the Attorney's Acknowledgment on the severance agreement on May 5, 1994, stating that he had reviewed the agreement with Lee and that Lee had signed it voluntarily and knowingly with Meyers' approval. Lee actually refused to sign the agreement on May 5, 1994, however, without substantial additional consideration. As a result, on May 6, 1994, Borge wrote Lee the following letter:

Dear Terry,

Today, you said that you would not sign our Severance Agreement under which the Company was going to pay you [amount obliterated from the exhibit] plus five (5) weeks pay. You told me that you would sign the Agreement if the Company gave you an additional [amount obliterated from the exhibit]. Because that was not our agreement, I declined. Nonetheless, I told you that you would have through Monday if you wanted to change your mind. However, upon recalculation, you will have through the close of business 4:00 p.m. on Tuesday, May 10, 1994, to sign the Agreement; thereafter, the Company will conclude that you have revoked our Agree-

---

7. On the date of the statement, Lee had pending against Farmers an EEOC charge concerning the move to Des Moines, and a lawsuit in California concerning hiring practices and promotional opportunities for minorities. On the date of the statement, Lee learned that a court reporter would be present and he agreed to proceed on that basis. Lee claims that after he gave his statement, he was told that his career was over.

Under D.Kan.Rule 56.1, all facts on which a motion or opposition is based shall be presented by affidavit, declaration under penalty of perjury, and/or relevant portions of pleadings, depositions, answers to interrogatories and responses to requests for admissions. Lee has not established through competent evidence, nor has he referred with particularity to any portion of the record which supports his allegation that after he gave his statement, he was told that his career was over.

8. Lee identified one witness who no longer worked for Farmers.

9. Plaintiff claims that his attorney withdrew from negotiations when it became obvious that Lee was not being given a choice, but he has not established this statement with any competent evidence. Moreover, his claim is contradicted by admitted facts of record.

10. While plaintiff denies that he consulted with the EEOC regarding the agreement, he has not established his position with competent evidence.

11. Lee had extensive personal experience regarding settlement negotiations and agreements because his entire career with Farmers was in the claims department. Lee had reviewed and negotiated settlement agreements, suggesting revisions to agreements, working directly and through counsel regarding settlement agreements, and explaining to insureds the meaning and effect of releases.

ment and the Company will be relieved of all obligations under the Agreement. As the Agreement states, after signature, you have a period in which you can choose to rescind the Agreement. You will not be returning to work for the Company.

Apparently in response to Borge's letter, Lee executed the "Terry Lee Severance Agreement" on May 9, 1994. The agreement provides in relevant part as follows:

1. Lee's employment with Farmers ended by his resignation for personal reasons unrelated to his work effective April 15, 1994. Lee will never again seek or accept employment anywhere with Farmers or any related agents, firms and entities. * * *

3. The following consideration is in excess of anything which Farmers is legally or morally obligated to provide Lee. Subject to paragraph 2, Farmers will pay Lee $101,000, plus five weeks pay less normal withholding and deductions, within seven days after this Agreement cannot be rescinded. Farmers is only providing the consideration in exchange for Lee's agreement to this Agreement. * * *

6. Lee releases Farmers and all related persons, agents, firms and entities and all related benefit plans and trusts from all claims for money, injunction, attorneys' fees and anything else, whether the claims are known now or discovered later, which he could have now or in the future under all express and implied contracts and under all federal, state and local constitutions, statutes (including federal, state and local discrimination in employment acts which, without limitation, prohibit discrimination and retaliation), regulations and rules of law (including tort claims) ("Claims"). Regardless of anything to the contrary, after being fully advised as to his rights, Lee unconditionally and specifically intends to release Claims which he does not know or suspect to exist in his favor. The only exceptions to Lee's release are a) claims for a breach of this Agreement; b) independent claims which are not within the scope of this Agreement and which completely arise after the effective date of this Agreement; c) claims for deferred

profit sharing and retirement benefits for which Lee was vested as of April 15, 1994.

7. Lee immediately shall dismiss with prejudice on the merits, each party to bear its own fees and costs, EEOC charge number 340930428 and all other pending charges, complaints and Claims that are pending in any forum against Farmers and any or all of the persons and entities released. * * *

11. Lee agrees that, except to the extent required by a specific law, Lee will not participate or assist in the assertion or prosecution of any legal claim against Farmers, except as requested by Farmers. Lee will immediately, by the fastest means available, notify Farmers if he receives a subpoena, legal process, or any written or oral inquiry regarding Farmers' business and employment practices. * * *

13. Lee agrees that he shall not disclose or utilize any trade secrets, confidential information, or other proprietary information acquired during the course of his employment with Farmers, including without limitation, internal Farmers financial information, operational procedures, or business plans. Within eight (8) days of signing this Agreement, Lee will return to Farmers the original and all copies of all Farmers information and records and all Farmers' property which Lee has in his control anywhere. * * *

14. In the event that there is administrative or judicial litigation between the parties regarding a breach of this Agreement, the prevailing party shall be entitled to recover its full attorneys' fees and legal expense from the other party, regardless of any law to the contrary. This Agreement will be interpreted and enforced under the laws of Kansas.

15. Lee agrees that, by this Agreement, Farmers advised him in writing to consult with an attorney of his choice before signing this Agreement. Lee further agrees that, as of April 18, 1994, he knew that he had up to 22 days from April 18, 1994, to consider this Agreement.

16. Lee agrees that he may rescind (that is, cancel) this Agreement within seven (7) calendar days after signing it. Lee

agrees that he knows that Farmers will not have to provide him anything under this Agreement if he rescinds the Agreement and that nothing will be provided until the Agreement cannot be rescinded. To be effective, Lee's rescission must be in writing and received by Farmers either by hand or by mail within the seven-day period. If sent by mail, the rescission must be postmarked and received within the seven-day period, properly addressed to Farmers and sent by certified mail, return receipt requested. * * *

18. Lee agrees that he has been given adequate opportunity to consider and review this Agreement and to discuss it with an attorney and others. Lee has carefully read this Agreement, has no more questions about it, and understands all its terms. Lee agrees that he is entering into this Agreement (including, without limitation, the release giving up his rights against Farmers and others) voluntarily because this Agreement is to his benefit.

Lee read and understood each paragraph of the severance agreement and voluntarily entered into it. He understood that paragraph 6 released all claims within the scope of the agreement, whether known or unknown, against Farmers. He also understood that

paragraph 7 would preclude any claims which could have been raised in connection with his pending EEOC charge (Charge No. 340930428). Moreover, although paragraph 16 provided Lee the right to rescind within seven days, he did not exercise that right because he intended to be bound by the agreement. In compliance with the agreement, Lee told the EEOC to discontinue its investigation of Charge No. 340930428. Finally, Lee retained the substantial consideration ($101,000.00 plus five weeks' pay) which he received under the agreement.

Lee violated paragraphs 11 and 13 of the severance agreement by (a) assisting in the assertion of claims against Farmers in a case in the Superior Court of California [the *Silverwood* litigation, Case No. N58721], in which Lee appeared as an expert witness; and (b) disclosing Farmers' confidential information in connection with that work. As a result, on August 4, 1994, Farmers filed suit for breach of contract and injunctive relief, seeking to prohibit Lee's breaches of the severance agreement.[12] That same day, the Johnson County District Court issued an *ex parte* restraining order, ordered Lee to appear for a deposition, and directed Lee to show cause on August 17, 1994 why a temporary injunction should not be issued.[13]

---

12. Lee complains that Farmers' attorney, Leonard Singer, was a Missouri lawyer and was not authorized to practice law in the State of Kansas from August 4, 1994 through November 16, 1994, but that he nonetheless performed the various illegal acts, to-wit: (1) filing a verified petition for injunctive relief in the Kansas State Court proceeding; (2) signing pleadings in that suit, including certificates of service, without the signature of a Kansas attorney; (3) obtaining a temporary restraining order by making false statements to the court concerning service of process; (4) obtaining a temporary injunction by submitting a false certificate of service; and (5) conducting a ten-hour deposition on November 11, 1994, before being admitted *pro hac vice* in Kansas on November 16, 1994. Lee also complains that Farmers did not serve him or his attorney with a copy of the motion to admit Singer *pro hac vice*, as required by Kansas Supreme Court Rule 116, or a copy of the order entered on November 16, 1994.

Farmers disputes these allegations, and argues that Singer did not violate any court rule because he always participated with the signature or appearance of Kansas counsel (including at Lee's deposition on November 11, 1994). This dis-

pute, if any exists, is irrelevant to the pending motions.

13. On August 4, 1994, Lee was in Washington, D.C. but resided in the state of Georgia. He complains that Farmers made it appear that he had been notified of the *ex parte* hearing by filing a verified petition for injunctive relief which falsely stated that he was a resident of Kansas and falsely certified that he had been personally served. As of August 4, 1994, however, Lee had not been served and Farmers does not contend otherwise. Under K.S.A. § 60–903, however, Farmers was not required to give Lee notice of its request for the temporary restraining order which issued on August 4, 1994.

Farmers effectuated personal service on August 7, 1994, Lee admits service on that date and the Johnson County court held on September 22, 1994, that Farmers had personally served Lee on that date.

The record reveals a factual dispute whether Farmers represented to the court, at the hearing on August 4, 1994, that Lee had been notified of the hearing and chosen not to appear. This dispute is immaterial, however, to any issue before this Court.

On September 22, 1994, the Johnson County court conducted a hearing on Farmers' request for a temporary injunction. Notwithstanding proper notice, Lee failed to appear either personally or through counsel. Following a hearing, however, the Johnson County court held that in the severance agreement, for adequate consideration, Lee had knowingly and voluntarily agreed that he would not assist in the assertion of any claims against Farmers and that he would not disclose confidential information obtained as a result of his employment with Farmers. The Johnson County court held that Lee had breached the agreement by his participation in the *Silverwood* case. It therefore issued a temporary injunction which barred Lee from any conduct or communication in violation of the severance agreement.

On October 12, 1994, the Johnson County court ordered Lee to show cause why he should not be sanctioned for deliberate and willful violation of the temporary restraining order of September 22, 1994. At the hearing on the order to show cause, held on October 21, 1994, Lee appeared through counsel. At that time, the court overruled Lee's request for a 20–day continuance and held him in contempt of a valid restraining order. It fined Lee $5,000.00 for his continuing breaches of the severance agreement.

The Johnson County court scheduled for November 17, 1994, a hearing on Farmers' request for a permanent injunction. Lee sought to postpone that hearing. Farmers agreed to a continuance on the condition that Lee stipulate to abide by the temporary injunction until the court issued its order on the permanent injunction (re-set for hearing on January 3, 1995). On November 18, 1994, fully advised of his rights and obligations, Lee specifically and unconditionally agreed to that stipulation in writing.

On January 3, 1995, following the duly noticed hearing on Farmers' motion for a permanent injunction,[14] the Johnson County court entered the permanent injunctive relief sought by Farmers.

Notwithstanding the permanent injunction, Lee continued to participate and assist in the *Silverwood* litigation. As a result, following a hearing on April 13, 1995, the Johnson County court again found Lee in contempt. This time, the court fined Lee $101,000.00 (the principal amount Lee had received under the severance agreement) and awarded Farmers attorneys fees and costs for breach of the severance agreement.[15]

Notwithstanding his release of all claims in the severance agreement, and notwithstanding the temporary injunction that enjoined Lee from engaging in any conduct or communication in violation thereof, Lee filed this action on October 4, 1994.[16] Lee's commencement and maintenance of this action violated the severance agreement.[17] Lee claims that the severance agreement is invalid, however, because he executed it under duress or mistake. Specifically, Lee claims that Farmers coerced, intimidated, and threatened to terminate his employment, without cause or benefits, if he did not sign the agreement.[18] With respect to that position, Lee testified as follows:

14. On November 28, 1994, the Johnson County District Court granted the motion to withdraw filed by Lee's counsel. Notwithstanding proper notice, Lee did not appear at the hearing on January 3, 1995, in person or through counsel.

15. Notwithstanding proper notice, Lee did not appear or otherwise respond to the court's order to show cause why he should not be held in contempt and be liable for attorneys' fees.

16. Shortly thereafter, on November 4, 1994, Lee filed his answer in the Johnson County suit. In that answer, Lee admitted execution of the severance agreement but asserted that it was unenforceable because it was illegal, unconscionable and against public policy, and that his assent to the agreement had been procured by duress and coercion.

17. Lee asserts that the Title VII claims in this action are based upon EEOC Charge No. 340930428, which he filed before resigning his employment and executing the severance agreement.

18. Lee's allegation that Farmer's "coerced, intimidated, and threatened to terminate employment, without cause or benefits, if plaintiff did not sign the agreement" is a conclusory allegation which does not raise a genuine issue of material fact. Moreover, it is negated by Farmers' statement of material facts, which Lee has not controverted.

Q: Handing you now what the court reporter has marked as [the complaint in this case]. Do you recognize this as a federal court lawsuit filed October 4th, 1994, against Farmers Group, Inc., and Farmers Insurance Exchange by Mr. Clifford on your behalf?

A: Yes * * *

Q: Why is Exhibit 30 not a breach of your severance agreement? * * *

A: It was filed after Farmers sued me for breach of contract.

Q: Any other reason?

A: Not that I'm aware of at this time.

*Deposition of Terry G. Lee [Lee Dep.]* (November 11, 1994) at 218–219.

Lee also claims that the agreement is voidable on account of mistake. In that regard, Lee testified as follows:

Q: If you'd turn to Page 9 of [the complaint], it says in Paragraph 62, at the time that you entered—executed the severance agreement, defendants, Farmers, knew or had reason to know of your mistaken beliefs about the agreement. How would Farmers know your mistaken beliefs about the agreement?

A: I don't know. You'll have to ask my attorney, he drafted the lawsuit.

*Lee Dep.* at 219.

On April 18, 1995, Farmers urged Lee to dismiss this action and offered to forbear any right to attorneys' fees in this action if he promptly dismissed the action.

### ANALYSIS

**A. Lee's Claims Are Barred Because They Were Compulsory Counterclaims in the Johnson County Suit.**

■ Defendants claim that plaintiff's claims are barred because they were compulsory counterclaims in the Johnson County lawsuit. K.S.A. § 60–213(a), which defines a compulsory counterclaim, is almost identical to Rule 13(a) of the Federal Rules of Civil Procedure. It generally requires a pleading to state as a counterclaim "any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." K.S.A. § 60–213(a) makes two exceptions to this general rule, but neither applies in this case.

■ Under Kansas law, the essential test of a mandatory counterclaim is whether the counterclaim arises out of the same transaction. *Loving v. Federal Land Bank of Wichita*, 244 Kan. 96, 99, 766 P.2d 802, 804–805 (Kan.1988), citing 1 Gard's Kansas C.Civ. Proc. § 60–213(a), pp. 77–78 (1979). As to Lee's claims in this Court, it is difficult to imagine claims that more clearly or directly arise out of the transactions and occurrences that were the subject of the Johnson County proceeding. All of Lee's claims in this case arise out of his employment with Farmers and/or his execution of the severance agreement. Lee's employment with Farmers, and his breach of the severance agreement, comprised the subject matter of Farmers' state court action. Indeed in that case, Lee defended in part on the ground that the severance agreement had been procured through duress and mistake. The claims which Lee seeks to assert here were clearly available in the Johnson County case, and the Court finds that they were mandatory counterclaims in that action under K.S.A. § 60–213(a).

■ While K.S.A. § 60–213 does not explicitly provide that failure to plead a compulsory counterclaim precludes the pleader from asserting it in a subsequent action, the Kansas courts have consistently applied the statute in that fashion. *E.g., Loving v. Federal Land Bank of Wichita, supra*, 244 Kan. at 99, 766 P.2d at 804; *Mohr v. State Bank of Stanley*, 241 Kan. 42, 51, 734 P.2d 1071, 1079 (Kan.1987); *Banister v. Carnes*, 9 Kan. App.2d 133, 137–138, 675 P.2d 906, 910–911 (Kan.App.1983). State law governs the preclusive effect of failure to raise a compulsory counterclaim in an earlier state court action. *Glasgow v. Eagle Pacific Insurance Co.*, 45 F.3d 1401 (10th Cir.1995); *Pochiro v. The Prudential Insurance Co.*, 827 F.2d 1246, 1253 (9th Cir.1987).

The conclusion inescapably follows that Lee's claims are barred because they were compulsory counterclaims in the state court

action. Lee makes no contrary argument, arguing only that defendants illegally obtained injunctive relief against him in the Johnson County court[19] and that the subject motion for summary judgment relies heavily on discovery illegally obtained in that proceeding.[20] Lee articulates no plausible theory under which these points excused him from compliance with Kansas law concerning compulsory counterclaims. Accordingly, Lee's arguments may be summarily rejected.

### B. Farmers' Counterclaim For Attorneys' Fees and Legal Expenses Under Severance Agreement.

■ Paragraph 14 of the severance agreement provides as follows:

In the event that there is administrative or judicial litigation between the parties regarding a breach of this Agreement, the prevailing party shall be entitled to recover its full attorneys' fees and legal expense from the other party....

In defendants' counterclaim, they assert that Lee breached the severance agreement by filing *this action*, asserting claims that were released in paragraph 6 of the agreement, and by failing to dismiss EEOC charge number 340930428, in violation of paragraph 7 of the agreement. On this record, the Court concludes that defendants' request for summary judgment on their counterclaim must be denied.

First, defendants are not entitled to recover any of the attorneys' fees and costs incurred in this action if the severance agreement is void or voidable because of coercion or mistake. In the Johnson County proceeding, on November 4, 1994, Lee filed an answer admitting execution of the agreement but asserting that it was unenforceable because it was illegal, unconscionable and against public policy, and that his assent to the agreement had been procured by duress and coercion. From the record before this Court, it would appear that the Johnson County court resolved this issue on the merits, adversely to Lee. The record suggests that Lee has appealed the state court's permanent injunction order of January 3, 1995, its contempt order of April 13, 1995, and a further contempt order of August 16, 1995. The status of the appeal remains unclear, and this Court cannot determine whether the enforceability of the severance agreement has been determined on the merits or whether it remains subject to active appellate consideration. Moreover, the record suggests that on October 12, 1995, Lee filed suit against Farmers in the United States District Court for the Northern District of Georgia asserting the very claims advanced in this case. The Court cannot ascertain what action, if any, that court has taken with respect to the enforceability of the severance agreement.[21] In short, the Court needs more information concerning *res judicata* and collateral estoppel issues. Without that information, the Court cannot decide as a matter of law whether it can or should enter summary judgment on Farmer's counterclaim.

■ Second, defendants' claim that Lee breached the severance agreement by failing to dismiss EEOC charge number 340930428 in violation of paragraph 7 of the agreement, is also problematical from a summary judgment standpoint. As a threshold matter, the record is not clear that Lee in fact failed to

**19.** The Court understands this argument to refer to Lee's claim that defendants obtained *ex parte* injunctive relief against him on August 4, 1994, without having first obtained proper service of process on Lee. Any defect in service was apparently cured, however, by August 7, 1994. Moreover, see footnote 13, *supra*.

**20.** The Court understands this argument to refer to Lee's claim that defense counsel, Leonard Singer, participated in discovery in the Johnson County suit before the court had officially admitted him to practice *pro hac vice* in Kansas.

**21.** Farmers represents that on November 7, 1995, it filed a motion to dismiss the Georgia federal action, on the grounds of *res judicata*, collateral estoppel, and judicial policies opposing multiple litigation. In this case, however, Farmers notes that Lee has appealed the permanent injunction judgment in the Johnson County case and argues that *if affirmed*, doctrines of *res judicata* and collateral estoppel may bar Lee's claims in this action. The distinguishing factual and legal principles—which might explain why the Georgia action is subject to dismissal while this action is only potentially subject to dismissal—are impossible to detect on this record.

dismiss the subject EEOC charge.[22] In addition, the severance agreement called for Lee to dismiss the EEOC charge immediately after May 9, 1994, and to "promptly" provide Farmers a copy of his dismissals. As a result, any breach occurred well before August 4, 1994, when defendants filed their suit against Lee in the District Court of Johnson County, Kansas, for breach of the severance agreement. One may reasonably question whether Farmers has violated any rule of Kansas law which prohibits splitting causes of action and, if so, whether Farmers is therefore precluded from maintaining this action for a breach of the same contract involved in the state court litigation. The Court is mindful of Kansas cases which have held that an action for injunctive relief or specific performance does not constitute the same cause of action as an action for damages. *E.g., Thompson–Hayward Chemical Co. v. Cyprus Mines Corp.*, 8 Kan.App.2d 487, 492, 660 P.2d 973, 977 (Kan.App.1983), and cases cited therein. Such cases might support an argument that Farmers did not split its causes of action for breach of contract because its Johnson County action, for equitable relief, was predicated on a difference cause of action from the instant action for damages. This record raises a substantial question concerning the viability of this argument since, while defendants have not favored us with a complete set of the Johnson County pleadings, the record is clear that that Court awarded defendants costs and attorneys' fees for breach of the severance agreement—at least through December, 1994.

For these reasons, the Court cannot grant summary judgment with respect to attorneys' fees and legal expenses. That claim is hereby set for jury trial commencing **July 23, 1996.**

**IT IS THEREFORE ORDERED** that *Defendants' Joint Motion for Summary Judgment in Their Favor on Lee's Claims and on Their Counterclaim* (Doc. # 11) filed May 5, 1995, be and hereby is sustained in part, in that the Clerk shall dismiss without prejudice, because they are barred by Kansas law with respect to compulsory counterclaims, the claims contained in plaintiff's complaint.

**IT IS HEREBY FURTHER ORDERED** that *Plaintiff's Motion for Summary Judgment in His Favor on All Claims Presented* (Doc. # 17) filed May 25, 1995, be and hereby is overruled.

**IT IS HEREBY ORDERED** that the Court's prior stay is hereby lifted and the following schedule shall apply:

1. On or before **April 19, 1996,** the parties shall exchange the information required by Fed.R.Civ.P. 26(a)(1), along with any documents identified therein. Supplementation shall occur at 30 day intervals but not later than 30 days before trial.

2. Discovery shall be completed by **June 3, 1996.**

3. The deadline for service of interrogatories, requests for production, and requests for admission is **April 30, 1996.** Responses will be due **20 days** after service.

4. Plaintiff will be allowed six depositions; defendants will be allowed three depositions. Depositions shall not exceed four hours, without agreement of counsel.

5. Defendants by **May 1, 1996,** will provide the information required under Fed. R.Civ.P. 26(a)(2)(B) pertaining to expert witnesses expected to be called at trial. Plaintiff will provide like information by **May 21, 1996.**

6. By **April 19, 1996** the parties will exchange proposed exhibits and preliminary of exhibits and witnesses. Final lists shall be filed on or before **June 3, 1996.** The lists of witnesses shall set forth the address of each witness, as well as the subject matter, and a brief synopsis of the substance of the facts to which each witness is expected to testify. Witnesses expected to testify as experts shall be so designated. Witnesses and exhibits listed by one party may be called or offered

---

22. The undisputed fact is that "[i]n compliance with the Agreement, Lee called the EEOC and told it to discontinue its investigation of his pending charge number 340930428 against Farmers." *Defendants' Local Rule 206 Statement of Facts and Brief in Support of Their Motion For Summary Judgment In Their Favor on the Complaint and On Their Counterclaim* (Doc. # 12) filed May 5, 1995, at p. 8, ¶ 13.

by the other party. Witnesses and exhibits not identified and exchanged as required by this order shall not be permitted to testify or be received in evidence, respectively, except by agreement of counsel or upon order of this Court, or in proper rebuttal. The provisions of Fed.R.Civ.P. 26(a)(3) and 26(a)(4) shall apply to witness and exhibit lists.

7. Counsel for the parties are directed to confer with their clients about the benefits of submitting this case to the Court's mediation panel for resolution prior to conducting extensive discovery, thereby avoiding unnecessary costs to the parties. If mediation is acceptable, counsel are also to confer with their clients and with each other and agree upon a particular panel member as their mediator. Counsel are is directed to report to the Court by **May 1, 1996** whether the parties have agreed to early mediation and, if so, which member of the panel they have chosen to conduct the mediation proceedings.

8. This case is hereby set for trial and will be on a trial calendar which will commence on **July 23, 1996.**

**DATED** this 8th day of April, 1996, at Kansas City, Kansas.

### SUPPLEMENTAL MEMORANDUM AND ORDER

On April 8, 1996, the Court entered its *Memorandum and Order* with respect to *Plaintiff's Motion For Summary Judgment In His Favor On All Claims Presented* (Doc. # 17) filed May 25, 1995, and *Defendants' Joint Motion For Summary Judgment In Their Favor On Lee's Claims And On Their Counterclaim* (Doc. # 11) filed May 5, 1995. In further support of its order with respect to the compulsory counterclaim issue, the Court hereby refers the parties to *U.S. Fidelity & Guaranty Co. v. Maish,* 908 P.2d 1329, 21 Kan.App.2d 885 (Kan.App.1995), which contains an exhaustive treatment of the Kansas law with respect to the issue.